UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CR 25-479 PJS/ECW

| | |
|---|---|
| UNITED STATES OF AMERICA, | **INDICTMENT** |
| Plaintiff, | 18 U.S.C. § 1343 |
| | 18 U.S.C. § 981(a)(1)(C) |
| v. | 21 U.S.C. § 853(p) |
| | 28 U.S.C. § 2461(c) |
| 1. HASSAN AHMED HUSSEIN, and | |
| 2. AHMED ABDIRASHID MOHAMED | |
| Defendants. | |

THE UNITED STATES GRAND JURY CHARGES THAT:

At times relevant to this Indictment:

1. The defendants devised and carried out a scheme to defraud federally funded health care benefits collected within Minnesota's Housing Stability Services Program. That was a program designed to help people with disabilities and addictions find and maintain housing. Rather than provide such help, the defendants obtained and misappropriated millions of dollars in program funds that were intended as reimbursements for services provided to those people.

    **A.    Background on Minnesota's Housing Stability Services Program**

2. In July 2020, Minnesota became the first state in the country to offer Medicaid coverage for Housing Stabilization Services. The Housing Stabilization Services Program is a Medical Assistance (that is, Medicaid) benefit designed to help people with disabilities, including seniors and people with mental illnesses and substance use disorders, find and maintain housing.

SCANNED
DEC 16 2025
U.S. DISTRICT COURT MPLS

*United States v. Hassan Ahmed Hussein, et al.*

    3.    The Program permitted reimbursements for four principal kinds of services:

    (a) Housing consultation, during which a consultant (like a social worker or nurse) helps a beneficiary complete a Department of Human Services form called a "Person-Centered, Housing Focused Plan." The Plan is a form available from the Department of Human Services. It requires minimal information. Consultants could bill Medicaid about $174 for a consulting session.

    (b) Housing transition services, during which a provider helps a beneficiary plan for, find, and move into housing. Providers can bill about $68 per hour of transition services provided.

    (c) Housing sustaining services, during which a provider helps a beneficiary keep their housing after they have moved in (including through behavioral management of the beneficiary). For sustaining services, too, providers can bill about $68 per hour.

    (d) Moving expenses of up to $3,000, subject to conditions.

    4.    By design, the Program had a low barrier to entry for new providers. A would-be provider needed only be at least 18 years old, submit some enrollment paperwork to Minnesota Department of Human Services (DHS), undergo a background check, and complete about five hours of online training videos. Providers did not have to have a medical license or social work training.

    5.    Similarly, the Program had a low barrier to entry for beneficiaries. Beneficiaries needed only be at least 18 years old, have coverage under Medical Assistance (which is Minnesota's Medicaid program for people with low income), have a documented disability or "disabling condition," and be experiencing housing instability. Program rules defined those final two conditions expansively. To receive billable services, a beneficiary meeting these requirements just needed to complete, with a Program-qualified consultant, a document called a Housing Focused Plan,

detailing their housing challenges and needs. That done, the beneficiary could enroll with a provider. And the provider could start billing for services provided.

6. To bill, a provider needed to submit only the names of the beneficiaries serviced, the types of billable services provided, and the hours worked.

7. The HSS Program's low barriers to entry and minimal records requirements for reimbursement combined to make the Program susceptible to fraud.

8. Before the Program's inaugural year, DHS predicted the Program would cost about $2.6 million annually. That proved to be inaccurate. In 2021 alone, the Program paid out more than $21 million in claims. That figure ballooned in the following years: $42 million in 2022, $74 million in 2023, $104 million in 2024. In just the first six months of 2025, the Program paid out another $61 million.

9. A federal investigation revealed that many Program providers defrauded the system. These providers acquired the names of Program-eligible beneficiaries from facilities like addiction treatment centers. They then used those individuals' information to submit inflated and fake reimbursement claims. In this fashion, the providers acquired substantial pay-outs of taxpayer money to which they were not entitled. They used those ill-gotten gains for their own enrichment.

**B. The Defendants and Their Roles**

10. HASSAN AHMED HUSSEIN and AHMED ABDIRASHID MOHAMED owned and operated a company called Pristine Health LLC.

11. HUSSEIN and MOHAMED registered Pristine with the Minnesota Secretary of State on or about January 10, 2022. At the same time, HUSSEIN and MOHAMED completed paperwork with DHS to enroll Pristine as an HSS Provider.

3

*United States v. Hassan Ahmed Hussein, et al.*

12. The defendants, along with their employees at Pristine, were supposed to provide housing consulting, transitioning, and sustaining services to qualifying people in need. Pristine was paid at quarter-hourly rates and with Medicaid dollars based on the services it claimed to provide.

13. In all, between approximately January 2022 and April 2025, Pristine Health submitted approximately $750,000 in fraudulent Medicaid claims related to the Housing Stabilization Services program.

## Counts 1-5
(Wire Fraud)

14. From in or about January 2022 through in or about June 2025, in the State and District of Minnesota, and elsewhere, the defendants,

**HASSAN AHMED HUSSEIN** and
**AHMED ABDIRASHID MOHAMED**,

and others known and unknown to the grand jury, did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

15. The purpose of the scheme was to fraudulently obtain Housing Stability Services Program funds by causing the submission of fake and inflated bills. The defendants were responsible for providing program-eligible housing services through Pristine Health to people in need. However, in furtherance of the scheme, the defendants and their conspirators caused the submission of false claims information that significantly overrepresented the services they provided. In so doing, the defendants received taxpayer dollars to which they were not entitled.

16. In furtherance of the scheme to defraud, in or about January 2022, HUSSEIN and MOHAMED registered Pristine Health with the Minnesota Secretary of State and then submitted paperwork to DHS to operate Pristine as an HSS provider. The defendants thereafter purported to service individuals in need through Pristine from an office suite in St. Paul.

17. HASSAN and MOHAMED shared responsibilities for Pristine's operations. Both defendants styled themselves as HSS "Program Coordinators" at Pristine. In those roles, both defendants interfaced with Pristine beneficiaries, including beneficiaries whose names Pristine used to fraudulently overbill the HSS Program.

18. To further their scheme, HASSAN and MOHAMED worked with another HSS Provider called Foundation First—which was in the business of generating fake HSS Program paperwork—to "consult" on many of Pristine's purported beneficiaries. Pristine and Foundation First worked together to fabricate Housing Focused Plans for Pristine beneficiaries. Pristine then used those beneficiaries' names to submit false claims to the HSS Program.

19. To further expand their operations, the defendants retained the services of another entity—Company 1—to find new beneficiaries whose names Pristine could use to bill the Program. Company 1 marketed their services to Pristine and to other HSS Providers, including an entity called Brilliant Minds Services LLC. In one marketing email, Company 1 encouraged HSS Providers, including Pristine, to use Company 1's services to "grow [their] clientele." Company 1 encouraged their "HSS

*United States v. Hassan Ahmed Hussein, et al.*

Clientele" to "grow bigger than you are now" and achieve "BIG profit." In another such email, Company 1 advised that in exchange for paying Company 1 a subscription fee, Providers could receive from Company 1 "a new list of clients every month." The email noted: "Do You Know if You have only ONE client submitted, it covers the WHOLE YEAR SUBSCRIPTION from US!" Company 1 also gave Providers a script to be used in the recruitment of new beneficiaries.

20. HASSAN and MOHAMED shared responsibility for submitting bills for purported reimbursable services through the HSS Program. In particular, the defendants contracted with two different software companies to facilitate the submission of Pristine's HSS claims.

21. Ultimately, the defendants claimed to service nearly 100 different beneficiaries through Pristine and for such services claimed to be entitled to about $750,000.

22. But in reality, the defendants' operations at Pristine provided only a fraction of their claimed total.

23. The defendants shared their fraud proceeds with conspirators, including their employees at Pristine, and they spent much of it on themselves and to fund personal travel, including to London, Sydney, Dubai, Istanbul, and several destinations in Saudi Arabia.

24. On or about the dates listed below, in the State and district of Minnesota and elsewhere, the defendants,

**HASSAN AHMED HUSSEIN** and
**AHMED ABDIRASHID MOHAMED**,

6

*United States v. Hassan Ahmed Hussein, et al.*

and others known and unknown to the grand jury, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date (on or about) | Wire Details |
| --- | --- | --- |
| 1 | April 27, 2023 | Email from HASSAN HUSSEIN to AllCare Software |
| 2 | August 22, 2023 | Email from HASSAN HUSSEIN to A. Hussein attaching paperwork for purported beneficiary Damien R. |
| 3 | September 18, 2023 | Email exchanges between AHMED MOHAMED and AllCare Software |
| 4 | October 31, 2024 | Email from AHMED MOHAMED to HASSAN HUSSEIN attaching paperwork for purported beneficiary Haley G. |
| 5 | December 31, 2024 | Email from HASSAN HUSSEIN to DHS regarding an emergency clients update |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATIONS

25. Counts 1 through 5 of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) in conjunction with Title 28, United States Code, Section 2461(c).

26. If convicted of any of Counts 1 through 5 of this Indictment, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense charged.

*United States v. Hassan Ahmed Hussein, et al.*

27.  If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____     _____
UNITED STATES ATTORNEY             FOREPERSON